(PRIZE.)

## The VENUS, JADEMEROWSKY, Claimant.

A question of proprietary interest, on farther proof. Restitution decreed.

Captors' costs and expenses ordered to be paid by the claimant, it being his fault that defective documents were put on board.

On farther proof, the affidavit of the claimant is indispensably necessary.

APPEAL from the Circuit Court of Georgia.

This cause was continued for farther proof at February term, 1816. (*Vide ante*, vol. I. p. 112.) Owing to various accidents, the farther proof was not received until the last term, and the cause was now argued upon the farther proof then produced and filed. It consisted of invoices of the cargo ; bills of lading ; accounts of sale ; accounts of disbursements ; the original correspondence between the

1820.

The Venus.

claimant and Mr. Jones, his agent in London ; and the original procuration from the claimant to Mr. Jones, recited in the power given from the latter to Diamond, the supercargo, one of the original papers found on board ; to which was added, the affidavit of Mr. Jademerowsky, the claimant, verifying the correspondence, and explaining the circumstances of doubt and suspicion which appeared upon the original evidence.

Feb. 11th.

Mr. *Harper*, for the claimant, recapitulated the facts of the original case, stating that this ship sailed from London under Russian colours in April, 1814 ; joined a British convoy at Portsmouth, and sailed for Barbadoes, where she arrived, and having again sailed bound to the Havanna, was captured on the latter voyage by a British cruizer, carried in for adjudication, and acquitted. She changed her destination for Amelia island, and was captured by an American cruizer. At the hearing in the District Court, the ship was restored by consent, and the cargo acquitted ; but the latter was condemned on appeal to the Circuit Court, the origin of the adventure not being traced farther than London, and it being supposed to be enemy's property concealed under a Russian garb. He argued from the farther proof, that all the circumstances of suspicion arising from the original evidence were now satisfactorily explained, and that consequently the claimant was entitled to restitution.

The *Attorney General*, contra, insisted, that the farther proof now produced was insufficient to satisfy

the doubts originally existing in the cause. The ship was captured in the same year with the *St. Nicholas*[a] and the *Fortuna*,[b] and under circumstances strikingly similar. They were all sailing under Russian colours, and documented as Russian vessels; but exclusively directed by British merchants, professing to be the mere agents of the neutral claimants. Even some of the same parties also appear in this case; and the captors have a right to look into these other cases in order to bring this circumstance to the notice of the Court.[c] The documents now produced are not such, nor verified in such a manner, as the Court had a right to expect. It is not difficult to conceive what fate such documents would have experienced had they been offered in a similar case to Sir W. Scott, after the eloquent description he has given, in the case last cited,[d] of the inexhaustible ingenuity with which new arts are invented to cover enemys' property under a neutral garb; and the jealous rigour with which, in very suspicious cases, he examines the documents offered to his inspection. In another case, he says, " goods shipped in the enemy's country are to be considered *prima facie* as the property of the enemy, and can only be taken out of that presumption by fair and unbiassed evidence, and not from evidence supplied *only from the enemy*."[e] But the greater part of the evidence in the

a 1 *Wheat.* 417.   b 2 *Wheat.* 161.
c The Rosalie and Betsy, 2 *Rob* 281.
d Ib.
e The Juno, 1 *Rob.* 100.

1820.

The Venus.

present case comes from that source, and is liable to that objection.

Mr. *D. B. Ogden*, for the claimant, in reply, argued, that as this Court, in granting the order for farther proof, had not stated what were the doubts to be explained by the claimant, it was sufficient if he had satisfactorily answered those suggested in the opinion of the Circuit Court. The claimant has given such an answer to those doubts, both by the production of documentary evidence, and by his own affidavit, which it is admitted, is indispensably necessary in order to guard against the inferences that might otherwise fairly be drawn from his silence. The documents are duly verified ; and that not merely by his agents in the enemy's country, but by his own oath, and by other testimony.

*Feb. 21st.*

Mr. Justice JOHNSON delivered the opinion of the Court. When this case was first brought to the view of this Court, it was accompanied by some others, in which Russian claimants presented themselves under circumstances which satisfied this Court, that their claims were false and fraudulent. On comparing those cases with this, there was such a striking similitude in their machinery, that it was impossible not to suspect that they were all fashioned upon the same model, and adapted to the same end. With the St.

Analogy between this case and the *St. Nicholas* and the *Fortuna.*

Nicholas[a] and the Fortuna,[b] full in view, this Court could not adjudge the case of this vessel to be a case of restitution. Still, however, there was a possibility that those may have been the forged copies, and

a 1 *Wheat.* 417.          b 2 *Wheat.* 167.

this the genuine prototype. This Court, therefore, trusting that a Russian character of high standing could not have pledged himself for the fairness of the transaction, but without better evidence than was then presented to our view, gave the most liberal indulgence for procuring evidence to support the claim. We now express our satisfaction in having done so; inasmuch as it has enabled an honest man both to save his property, and vindicate his reputation. And we cannot omit this opportunity to remark, how much it becomes the interest, as well as principles of the fair neutral, to discountenance the conduct of him who indulges himself in fraudulent practices. The claimant in this case had nearly fallen a sacrifice to the bad faith of some of his countrymen; a great loss from it he must unavoidably incur: For, this is one of those cases in which, by the course of the admiralty, we shall be obliged to throw the costs and expenses upon the claimant, although we decree restitution. It is altogether upon the evidence of Jones, and the test-affidavit of the claimant, introducing and verifying their original correspondence, that restitution is now decreed. Unsupported, and unexplained by the evidence introduced as further proof, the condemnation was unavoidable. It is, therefore, the claimant's misfortune, not that of the captors, that the agent Jones had furnished the vessel with the defective documents which accompanied her.

1820.

The Venus.

Captor's costs and expenses to be paid by the claimant.

Decree reversed.

DECREE. This cause came on to be heard on the transcript of the record of the Circuit Court for the

district of Georgia, and on the farther proof exhibited in this cause, and was argued by counsel. On consideration whereof, it is DECREED and ORDERED, that the decree of the Circuit Court for the district of Georgia in this case, condemning the cargo of the ship Venus, be, and the same is, hereby reversed and annulled. And this Court, proceeding to pass such decree as the said Circuit Court should have passed, it is further DECREED and ORDERED, that the said cargo of the ship Venus be restored to the claimant; and it is further decreed, that the said claimant pay to the libellants the costs and expenses incurred in the prosecution of this suit.